Filed 11/8/13  In re Edward W. CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re EDWARD W., a Person Coming Under the Juvenile Court Law. | B246620 (Los Angeles County Super. Ct. No. CK88238) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. WESLEY B., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Donna Levin, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

William Hook, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel and Tracey F. Dodds, Deputy County Counsel for Plaintiff and Respondent.

The juvenile court placed Edward W. in a legal guardianship with paternal relatives, and ordered monitored, once-a-month visits for his father, Wesley B. (father). Father appeals that order, contending the juvenile court erred in ordering monitored rather than unmonitored visits. We see no error, and affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

Father and Kathleen B. (mother) are the parents of Edward W., born March 1998. In 2006, while father was incarcerated, mother voluntarily relinquished custody of Edward to his paternal grandmother because she could not provide him with the necessities of life.

On May 30, 2011, Edward reported his paternal aunt hit him with a garden hoe. He called his father to pick him up from his grandmother's house. When father arrived, he was confronted by Edward's adult half-brother, Kyle, and two other men. Father struck Kyle, who then required medical attention.

Based on the foregoing events, the Department of Children and Family Services (DCFS) filed a Welfare and Institutions Code[1] section 300 petition on June 10, 2011. The juvenile court adjudicated Edward a dependent of the court on August 4, 2011, based on sustained allegations that mother had made an inappropriate plan for Edward's care by placing him in the home of his paternal grandmother, where his paternal aunt possessed and used illicit drugs in his presence and struck him with a garden hoe, and that father had exposed Edward to a violent altercation and had a history of substance abuse which periodically rendered him incapable of caring for his son. The court ordered the child to remain as placed with his paternal cousin and her husband, with whom he had been living since the dependency proceedings commenced. The court ordered father to participate in a drug program with aftercare, on-demand drug testing, a parenting program, and conjoint counseling with Edward. The court also ordered monitored visits for father

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

2

At the six-month review hearing on March 29, 2012, father requested his visitation be changed to unmonitored. Edward also asked that the visits be unmonitored. DCFS objected, noting that he failed to submit to drug tests 14 times for DCFS and had not completed his drug program. The court ordered unmonitored once-a-week visits for father.

In its July 26, 2012 report, DCFS reported Edward was doing well in his placement and in school. The parents visited about once a month, and kept in touch by phone and text message. The parents had "argued greatly" in front of Edward on his middle school graduation day, interfering with his planned celebration. Father's arguments with his son often devolved into shouted profanities.

The 12-month review report also indicated Edward was in counseling, and his therapist reported a significant reduction in his anxiety levels. He was smiling, laughing, and was able to joke with others. The therapist recommended Edward remain as placed with his cousin. Edward also reported to his therapist that his conversations with his parents had not gone well, and that they continued to blame him for things that happened in the home. He did not trust his parents to follow through with their promises. DCFS recommended the juvenile court terminate reunification services.

At the 12-month review hearing held on August 31, 2012, the juvenile court terminated reunification services for the parents. The court found that visitation with both parents was physically, mentally and emotionally detrimental to the child, and terminated the parents' visits. The court set the matter for a selection and implementation hearing.

Edward's caretakers recognized that he still had a relationship with his parents and, therefore, preferred legal guardianship over adoption. They wanted to provide Edward with stability, but did not want to replace his parents. Thus, legal guardianship was chosen as the permanent plan at the section 366.26 hearing held on December 28, 2012. Edward's attorney told the court that the child desired unmonitored visits with father. The court did not believe it would be safe for Edward to have unmonitored visits,

and was prepared to set the matter for a contested hearing, but Edward wanted the guardianship finalized and was willing to submit on the order for monitored visitation.

The juvenile court instructed the legal guardians that father was to have at least one hour of monitored visits per month. The court stated, "[I]f you think it is safe for Edward to have an overnight monitored visit with his father, that can be arranged, or anything that you think is safe." The legal guardianship was granted, and juvenile court jurisdiction was terminated.

DISCUSSION

Father's sole challenge to the juvenile court orders is the proviso that his visits with Edward be monitored. A visitation order is reviewed for abuse of discretion. (*Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 300.) "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.'" (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.)

Here, the juvenile court took jurisdiction of Edward because it found he was at risk of suffering physical harm due to father's violent altercation with the minor's half-brother and father's history of substance abuse. The court ordered father to participate in a drug and rehabilitation program with aftercare, to participate in 12-step meetings, and to drug test. Father did not complete his drug program during the pendency of these proceedings, and the court noted his compliance had been "minimal/moderate." Because "the parents [had] not consistently and regularly visited the child and [had] not made significant progress in resolving the issues that led to his removal, and [had] not demonstrated the capacity and ability to complete the objectives of the treatment plan and provide for the child's safety, protection, physical and emotional health and special needs," the court terminated reunification services on August 31, 2012. At that time, the court also found that "visitation with both parents [was] detrimental to the child, both

4

physically, mentally and emotionally detrimental" and ordered visitation terminated. Father did not file a writ petition seeking review of those findings.

Four months later, when the guardianship was put in place, the court ordered father be permitted once-a-month monitored visits. No new evidence was offered to suggest that the findings made by the court in August were no longer accurate. Indeed, when the juvenile court indicated that it would continue the hearing in order to hear such evidence, the minor's counsel reported that Edward "would like to have the case closed today in guardianship, so he's willing to submit on the monitored visits." Father did not object.

Father cites an opinion, *In re Brittany C.* (2011) 191 Cal.App.4th 1343, in which the appellate court affirmed the juvenile court's order denying all visitation to argue that the court here erred in limiting him to monitored visits. He states, "Like in *Brittany C.*, the issue in the instant case is the effect of the court's order limiting [father's] visits to supervised. The order here is akin to denying [father] a certain quality of visitation that is needed to support his longstanding, bonded relationship with his son. . . . The court's order limiting visitation would severely curtail their contact and limit any progress of the father-son relationship."

First, we fail to see how an appellate opinion *upholding* the juvenile court's order *denying all visitation* provides authority for father's appeal. Father cites no cases in which the appellate court *reversed* the juvenile court when, following termination of reunification services, it *limited* a parent's visitation to monitored visits.

Moreover, father appears to misunderstand the issue before the juvenile court in fashioning its visitation order, and his burden on appeal. First, unlike *In re Brittany C.,* in which reunifications efforts were ongoing, here reunification services had been terminated, and the sole concern of the juvenile court was Edward's best interests. Thus, the court could entertain no concern about providing father with "a certain quality of visitation;" it instead could be guided solely by its determination of Edward's best interests. Second, while father articulates multiple grounds in support of his request for unmonitored visitation, he cannot establish that the court's determination – that Edward's

best interests required father's visits to be monitored visits – was outside the bounds of reason. Father had exposed Edward to violence in the past, was not participating in a drug program, and engaged in arguments with his son in which he hurled profanities and blamed the child for the family's problems. The juvenile court acted well within its discretion in refusing to liberalize father's visitation rights when it granted guardianship of Edward to his relatives.

## DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KUMAR, J.[*]

We concur:

MOSK, Acting P. J.

KRIEGLER, J.

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.